**RECORD NOS. 14-1737(L); 14-1776 (XAP)**

In The

# United States Court of Appeals

For The Fourth Circuit

# MONSANTO COMPANY,

*Plaintiff – Appellee/Cross-Appellant*,

**v.**

# ARE-108 ALEXANDER ROAD, LLC,

*Defendant – Appellant/Cross-Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO**

———————

**RESPONSE AND REPLY BRIEF
OF APPELLANT/CROSS-APPELLEE**

———————

Mark E. McKeen
PAUL HASTINGS LLP
55 Second Street, 24th Floor
San Francisco, California  94105
(415) 856-7000

Joseph H. Stallings
HOWARD, STALLINGS, FROM
 & HUTSON, P.A.
Post Office Box 12347
Raleigh, North Carolina  27605
(919) 821-7700

*Counsel for Appellant/Cross-Appellee*        *Counsel for Appellant/Cross-Appellee*

# **TABLE OF CONTENTS**

**Page**

REPLY BRIEF....................................................................................1

ARGUMENT....................................................................................1

I.    THE DISTRICT COURT ERRED BY NOT DENYING OR
      CONTINUING MONSANTO'S MOTION FOR SUMMARY
      JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL
      PROCEDURE 56(D) SO THAT ARE-108 COULD
      CONDUCT REQUESTED DISCOVERY, AND GIVEN
      THAT THE RELEVANT LEASE PROVISIONS AND
      AMENDMENTS WERE SUFFICIENTLY AMBIGUOUS TO
      DENY SUMMARY JUDGMENT AT SUCH AN EARLY
      PROCEDURAL STAGE ...............................................................1

          A.    The District Court Should Have Permitted ARE-
                108's Previously Requested Discovery Prior to
                Making Any Dispositive Ruling on Monsanto's
                Motion for Summary Judgment.......................................2

          B.    The District Court Erred in Granting Monsanto's
                Motion for Summary Judgment as the Relevant
                Lease Provisions and Amendments are Sufficiently
                Ambiguous such that Summary Judgment was
                Unwarranted. ................................................................6

                1.    The District Court should have permitted
                      parol evidence via discovery to ascertain
                      how certain terms were meant to be used by
                      the parties in the 1B Lease, as well as the
                      related 1A and 1C Leases.....................................7

i

2.     Monsanto does not refute applicable North Carolina law that, even if words in a lease seem clear and unambiguous, a latent ambiguity exists if their meaning is less than certain when viewed in the context of all the surrounding circumstances, and evidence of negotiations may be considered to ascertain the actual intent of the parties. ..............................8

3.     At a minimum, there is latent or other ambiguities in the relevant lease provisions between the parties which would preclude summary judgment for Monsanto at such an early procedural stage, and prior to ARE-108's requested discovery on disputed issues. ................................................................11

RESPONSE BRIEF ......................................................................24

STATEMENT OF THE ISSUES ................................................24

STATEMENT OF THE CASE ...................................................24

SUMMARY OF THE ARGUMENTS.........................................28

ARGUMENT.............................................................................29

II.     THE DISTRICT COURT CORRECTLY DENIED MONSANTO'S REQUEST FOR ATTORNEYS' FEES AGAINST ARE-108 BECAUSE N.C. GEN. STAT. § 6-21.2(2) AND APPLICABLE LAW DO NOT PERMIT SUCH RECOVERY UNDER THE SPECIFIC FACTS OF THIS CASE.............................................................................29

A.     General Background, and the District Court's Memorandum Opinion and Order Denying Monsanto's Request for Attorneys' Fees under N.C. Gen. Stat. § 6-21.2 ...............................................29

B.      Under The Applicable Facts And Law, The
        District Court Correctly Denied Monsanto's
        Request for Attorneys' Fees Under N.C. Gen. Stat.
        § 6-21.2. ........................................................................31

        1.      Under applicable law, only a party "owed"
                debt under a contract can potentially recover
                attorneys' fees under N.C. Gen. Statute § 6-
                21.2; as the district court correctly held,
                Monsanto was not "owed" debt by ARE-108
                under the 1B Lease under the specific facts
                of this case. ........................................................34

        2.      As the district court correctly held,
                Monsanto is not "owed" any "mature" debt
                by ARE-108 under the 1B Lease, as required
                under N.C. Gen. Stat. § 6-21.2 for any
                potential fee award to Monsanto. ........................38

        3.      As the district court correctly held, as
                supported on many grounds, Monsanto was
                not "owed" any "outstanding balance" (as
                defined) by ARE-108 under the 1B Lease, as
                required under N.C. Gen. Stat. § 6-21.2 for
                any potential fee award to Monsanto. .................40

        4.      Monsanto did not serve ARE-108 with any
                required written notice under N.C. Gen. Stat.
                § 6-21.2(5) in order to seek recovery of
                attorneys' fees, as required for any potential
                fee award to Monsanto. .......................................43

        5.      As the district court correctly held, any
                award to Monsanto of attorneys' fees would
                not serve the stated purposes of N.C. Gen.
                Stat. § 6-21.2 in this case......................................48

6.    The district court correctly found that there was no secondary and/or separate agreement between ARE-108 and Monsanto which supported an award of attorneys' fees in this matter.................................................52

C.    Although The Issue Should Now Be Moot, An Attorneys' Fee Award Of 15% Of The "Outstanding Balance" Is Merely A Cap, And The Court Has Discretion To Award Less Than 15%..........54

1.    Recent case law has permitted attorneys' fee awards below 15% of the "outstanding balance" pursuant to the court's discretion. ........56

CONCLUSION................................................................58

LOCAL RULE 34(A) STATEMENT ........................................59

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# **TABLE OF CONTENTS**

**Page(s)**

## **CASES**

*Alchemy Commc'ns Corp. v. Preston Dev. Co.*,
148 N.C. App. 219, 558 S.E.2d 231 (2002) ....................................................9

*Bank One, N.A. v. A. Levet Props. P'ship*,
2004 U.S. Dist. LEXIS 14236 (E.D. La. July 21, 2003) ...............................39

*Blanton v. Sisk*,
70 N.C. App. 70, 318 S.E.2d 560 (1984),
*overruled on other grounds*,
105 N.C. App. 70, 318 S.E.2d 564 (1984)) .............................................44, 45

*Bombardier Capital, Inc. v. Lake Hickory Watercraft, Inc.*,
178 N.C. App. 535, 632 S.E.2d 192 (2006) .....................................32, 56, 58

*Brooks Millwork Company v. Levine*,
204 N.C. App. 595, 696 S.E.2d 924, 2010 WL 2366541
(N.C. App. June 15, 2010) ...........................................................44, 46, 47, 49

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................. 2-3, 5

*Childs v. Eltinge*,
105 Cal. Rptr. 864 (Cal. Ct. App. 1973) .......................................................37

*Conille v. Sec'y of Housing & Urban Dev.*,
840 F.2d 105 (1st Cir. 1988) ..........................................................................37

*Davis Lake Comty. Ass'n. v. Feldmann*,
138 N.C.App. 292, 530 S.E.2d 865 (2000) ...................................................45

*Devereux Properties, Inc. v. BBM & W, Inc.*,
114 N.C. App. 621, 442 S.E.2d 555 (1994) .....................................56, 57, 58

v

*F.D.I.C. v. Cashion*,
    2012 WL 1098619 (W.D.N.C. Apr. 2, 2012), *aff'd*,
    720 F.3d 169 (4th Cir. 2013) ......................................................36, 37, 44, 47

*Finch v. Campus Habitat, LLC*,
    220 N.C. App. 146, 724 S.E.2d 174 (2012) ................................................55

*Harrods Ltd. v. Sixty Internet Domain Names*,
    302 F.3d 214 (4th Cir. 2002) .........................................................................3

*Hicks v. Albertson*,
    284 N.C. 236, 200 S.E.2d 40 (1973) .....................................................29, 32

*In re Pak-a-Sak Food Stores, Inc.*,
    2008 Bankr. LEXIS 4390 (Bankr. E.D.N.C. Jan. 9, 2008) ....................57, 58

*In re Vogler Realty, Inc.*,
    365 N.C. 389, 722 S.E.2d 459 (2012) ....................................................36, 37

*Ingle v. Yelton*,
    439 F.3d 191 (4th Cir. 2006) ......................................................................3, 6

*Int'l Shortstop, Inc. v. Rally's, Inc.*,
    939 F.2d 1257 (5th Cir. 1991) .......................................................................3

*Jefferson-Pilot Life Ins. Co. v. Smith Helms Mulliss & Moore*,
    110 N.C. App. 78, 429 S.E.2d 183 (1993) .................................................7, 9

*Kindred of N. Carolina, Inc. v. Bond*,
    160 N.C. App. 90, 584 S.E.2d 846 (2003) .............................................38, 39

*Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*,
    143 N.C. App. 1, 545 S.E.2d 745, *aff'd*,
    354 N.C. 565, 556 S.E.2d 293 (2001) ..................................................*passim*

*McGuinnis Point Owners Ass'n, Inc. v. Joyner*,
    135 N.C. App. 752, 522 S.E.2d 317 (1999) ...........................................45, 46

*Mosley & Mosley Builders, Inc. v. Landin, Ltd.*,
    87 N.C. App. 438, 361 S.E.2d 608 (1987) .................................................7, 8

*Myers v. Myers*,
    213 N.C. App. 171, 714 S.E.2d 194 (2011) ....................................................8

*N.C. Indus. Capital LLC v. Clayton*,
    85 N.C. App. 356, 649 S.E.2d 14 (2007) ....................................................42

*Pantry Pride Enters., Inc. v. Glenlo Corp.*,
    729 F.2d 963 (4th Cir. 1984) ........................................................................37

*Premier, Inc. v. Peterson*,
    2012 NCBC 59, n.2 (N.C. Super. Ct 2012),
    *vacated and remanded on different grounds,*
    755 S.E.2d 56 (N.C. App. 2014) ..................................................................50

*Raintree Corp. v. Charlotte*,
    49 N.C. App. 391, 271 S.E.2d 524 (1980) ..................................................37

*R.C. Assocs. v. Regency Ventures, Inc.*,
    111 N.C. App. 367, 432 S.E.2d 394 (1993) ....................................49, 54, 57

*Root v. Allstate Ins. Co.*,
    272 N.C. 580, 158 S.E.2d 829 (1968) ..................................................3, 7, 9

*Rowe v. Rowe*,
    305 N.C. 177, 287 S.E.2d 840 (1982) ..........................................................7

*Silicon Knights, Inc. v. Epic Games, Inc.*,
    917 F. Supp. 2d 503 (E.D.N.C. 2012) ........................................................50

*Southland Amusements & Vending, Inc. v. Rourk*,
    143 N.C. App. 88, 545 S.E.2d 254 (2001) ..............................................42, 55

*Spruill v. Lake Phelps Volunteer Fire Dep't, Inc.*,
    351 N.C. 318, 523 S.E.2d 672 (2000) ........................................................51

*Spencer v. Hutchens*,
    2006 U.S. Dist. LEXIS 83784 (M.D.N.C. Nov. 16, 2006) ..........................42

*Starling v. Still*,
    126 N.C. App. 278, 485 S.E.2d 74 (1997) ....................................................7

*State Wholesale Supply, Inc. v. Allen*,
    30 N.C. App. 272, 227 S.E.2d 120 (1976) ...............................................48, 55
*Stevenson v. Barlett*,
    177 N.C. App. 239, 628 S.E.2d 442 (2006) ...................................................29

*Stillwell Enters., Inc. v. Interstate Equip. Co.*,
    300 N.C. 286, 266 S.E.2d 812 (1980) .....................................................31, 48

*Strader v. Sunstates Corp.*,
    129 N.C. App. 562, 500 S.E.2d 752 (1998) .............................................9, 10

*Telerent Leasing Corp. v. Boaziz*,
    200 N.C. App. 761, S.E.2d 520 (2009) ...................................................56, 58

*Trull v. Central Carolina Bank & Trust*,
    124 N.C. App. 486, 478 S.E.2d 39 (1996),
    *aff'd in part, rev. dismissed in part*,
    347 N.C. 262, 490 S.E.2d 238 (1997) ..............................................49, 54, 56

*WRI/Raleigh, L.P. v. Shaikh*,
    183 N.C. App. 249, 644 S.E.2d 245 (2007) ...................................................32

## **STATUTES**

N.C. Gen. Stat. § 6-21.2 ......................................................................*passim*

N.C. Gen. Stat. § 6-21.2(1) ...............................................................................33

N.C. Gen. Stat. § 6-21.2(2) ...............................................................*passim*

N.C. Gen. Stat. § 6-21.2(3) ...............................................................40, 42

N.C. Gen. Stat. § 6-21.2(4) ...............................................................41, 42

N.C. Gen. Stat. § 6-21.2(5) ...............................................................*passim*

N.C. Gen. Stat. § 6-21.5 ......................................................................52, 54

N.C. Gen. Stat. § 6-21.6 ......................................................................50, 51

N.C. Gen. Stat. § 6-21.6(a)(1) .................................................................50

N.C. Gen. Stat. § 6-21.6(b) .....................................................................50

## **<u>RULES</u>**

Fed. R. Civ. P. 56(d) ........................................................*passim*

Fed. R. Civ. P. 56(f) ...................................................................3

## REPLY BRIEF

## ARGUMENT

**I.     THE DISTRICT COURT ERRED BY NOT DENYING OR
CONTINUING MONSANTO'S MOTION FOR SUMMARY
JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 56(D) SO THAT ARE-108 COULD CONDUCT
REQUESTED DISCOVERY, AND GIVEN THAT THE RELEVANT
LEASE PROVISIONS AND AMENDMENTS WERE SUFFICIENTLY
AMBIGUOUS TO DENY SUMMARY JUDGMENT AT SUCH AN
EARLY PROCEDURAL STAGE**

As stated in its opening brief, in a case involving the review of, and

interrelation between, three lengthy, "options to renew" leases for commercial

premises in Research Triangle Park involving tenant Monsanto's office, laboratory,

warehouse and automated greenhouse space, landlord ARE-108 only requests that

all relevant evidence and documents be considered by the district court in order to

fully ascertain the parties' actual intent and proper interpretation of certain

ambiguous lease provisions regarding Monsanto's current and future rent

obligations to ARE-108.  The district court's rulings failed to provide ARE-108

with an opportunity to fully defend and oppose Monsanto's interpretation of the 1B

Lease, and the court erred in granting Monsanto's motion for summary judgment

and entering monetary judgment against ARE-108.

1

A.    **The District Court Should Have Permitted ARE-108's Previously Requested Discovery Prior to Making Any Dispositive Ruling on Monsanto's Motion for Summary Judgment**

In an unnecessary rush to judgment, the district court erred by not denying or continuing Monsanto's motion for summary judgment pursuant to Fed. R. Civ. P. 56(d) so that ARE-108 could conduct *previously* requested document and deposition discovery from Monsanto regarding the proper review of the parties' 1A, 1B and 1C Leases and amendments thereto.  If ARE-108 had been permitted to conduct such discovery, which Monsanto refused to produce, ARE-108 would have been able to provide the district court with its full and complete arguments in opposition to Monsanto's motion for summary judgment, which motion was later granted by the court absent a complete record.  Specifically, ARE-108's requested discovery sought relevant evidence on negotiations, discussions, letters of intent and internal communications/files regarding the proper interpretation of (and ambiguities within) the 1A, 1B and 1C Leases (and amendments) between the parties.  JA-I-146-157.

In its response brief, Monsanto does not deny that the purpose of Fed R. Civ. P. 56(d) is to prevent the opposing party from being "'railroaded' by a premature motion for summary judgment."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

326 (1986).[1]  Nor does Monsanto deny that (1) a Fed. R. Civ. P. 56(d)-based

"continuance of a motion for summary judgment for purposes of discovery should

be granted almost as a matter of course" (*Int'l Shortstop, Inc. v. Rally's, Inc*., 939

F.2d 1257, 1267 (5th Cir. 1991) (citations omitted)), (2) that the "denial of a

Rule 56(f) motion is particularly inappropriate when . . . 'the materials sought are

the object of *outstanding* discovery'" (*Ingle v. Yelton*, 439 F.3d 191, 196 (4th Cir.

2006) (emphasis added) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir.

1995)), or (3) summary judgment prior to discovery can also be "particularly

inappropriate" when a case involves complex factual questions about intent and

motive.  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247 (4th Cir.

2002).

        In its brief, Monsanto argues that the provisions of the 1B Lease are

so unambiguous that no such requested discovery regarding the parties' actual

intent and motive is relevant – *absent*, as Monsanto concedes via case citation, "an

allegation of fraud or *mistake* or unless the terms of the instrument itself are

*ambiguous* and *require explanation*."  Monsanto Br., p. 38, citing to *Root v.

Allstate Ins. Co.*, 272 N.C. 580, 587, 158 S.E.2d 829, 835 (1968) (emphasis

added).  As detailed below, the terms at issue in the 1B Lease are patently

ambiguous given that their meaning is less than certain when viewed in the context

---

[1] The Brief of Appellee/Cross-Appellant Monsanto Company (Document No. 22, filed November 3, 2014), is cited herein as "Monsanto Br."

3

of all of the surrounding circumstances, including the negotiated terms of the related 1A and 1C Leases. Specifically, there is an explainable issue as to whether the purpose and intent of the parties' Second Amendment to the 1B Lease was to continue the existing or "current" Base Rent through the first two extension periods, i.e., "through 2020", leading up to the additional, post-2020 extension periods granted in the Second Amendment.

Further, as to any allegation of fraud or mistake in the drafting of the relevant terms, and consistent with its discovery demands, ARE-108 alleged numerous equitable defenses in its Answer as well as expressly reserved "the right to assert *additional affirmative defenses in the event discovery indicates* that such defenses would be appropriate." (Emphasis added.) JA-I-55.[2] Given that Monsanto's strategic refusal to provide such requested discovery, and the district court's order thereafter granting summary judgment, the court denied ARE-108 an opportunity to present a full defense to Monsanto's motion for summary judgment, including but not limited to the defense of mutual mistake and/or the explanation of ambiguities as between the 1A, 1B and 1C Leases between the parties.

---

[2] ARE-108's express reservation to assert additional defenses following discovery undercuts Monsanto's argument that "summary judgment was appropriate granted before discovery because . . . ARE-108 has not alleged any contract formation defect such as duress or mutual mistake." Monsanto Br., p. 19.

As warned in the *Celotex* case, *supra*, it was clearly Monsanto's goal to "railroad" ARE-108 with a motion for summary judgment, and do so without allowing ARE-108 to conduct any requested document or deposition discovery from Monsanto and any necessary third parties regarding the negotiations, discussions, letters of intent and internal communications/files regarding the review of the 1A, 1B and 1C Leases (and amendments) at issue in this case. ARE-108's First Request for Production of Documents was served back on April 5, 2011 (and should have been responded to by Monsanto on May 9, 2011), and on April 14, 2011 ARE-108's counsel in writing requested to mutually schedule the depositions of the Monsanto witnesses after May 16, 2011 (i.e., promptly after receipt and review of Monsanto's produced documents). JA-I-146-157. In response, Monsanto refused to allow any discovery and filed a motion to stay discovery to further deny ARE-108 any discovery in this case. JA-I-87-107. However, the requested documents to be produced by Monsanto and the requested depositions of Monsanto witnesses (and any identified third parties) were relevant to this matter, and would have been used to fully and fairly oppose Monsanto's motion for summary judgment. JA-I-146-157.

A court may not deny a Rule 56(d) application for a continuance where the party opposing summary judgment makes a timely application which specifically identifies relevant information, and where there is some basis for

believing that the information sought actually exists. *Ingle v. Yelton*, 439 F.3d 191, 196 (4th Cir. 2006) (reversing, in part, and holding that the trial court abused its discretion in granting summary judgment before certain discovery had been completed) (citing *Visa Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986)).  Applied here, all such requirements were satisfied by ARE-108 in its application.

Accordingly, pursuant to Fed. R. Civ. P. 56(d), the district court erred by not denying or continuing Monsanto's motion for summary judgment so that ARE-108 could conduct previously requested (and focused) document and deposition discovery from Monsanto and any necessary third parties regarding the parties' actual intent and thus proper interpretation of the 1B Lease, as well as the related 1A and 1C Leases.

> **B.    The District Court Erred in Granting Monsanto's Motion for Summary Judgment as the Relevant Lease Provisions and Amendments are Sufficiently Ambiguous such that Summary Judgment was Unwarranted.**

Alternatively, the district court erred in granting Monsanto's motion for summary judgment at such an early procedural stage given the sufficiently ambiguous language in the relevant leases, such that discovery should have been permitted regarding the interrelated lease provisions in dispute between Monsanto and ARE-108.  As applied here, where a contract provision is ambiguous and the parties' actual intent is at issue, ambiguities are a matter to be resolved by the jury

upon consideration of "'the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.'" *Jefferson-Pilot Life Ins. Co. v. Smith Helms Mulliss & Moore*, 110 N.C. App. 78, 82, 429 S.E.2d 183, 186 (1993) (quoting *Cleland v. The Children's Home, Inc.*, 64 N.C. App. 153, 157 (1983). In so doing, the lease or leases "should be interpreted as a whole and the meaning gathered from the entire contract, and not from particular words, phrases, or clauses." *Starling v. Still*, 126 N.C. App. 278, 281, 485 S.E.2d 74, 76 (1997). And where the terms of the written documents are ambiguous, conflict, susceptible to more than one reasonable meaning, or require explanation, evidence of prior negotiations is *admissible* to aid the jury in determining how the ambiguous terms were used by the parties. *Rowe v. Rowe*, 305 N.C. 177, 185, 287 S.E.2d 840, 845 (1982).

> **1.    The District Court should have permitted parol evidence via discovery to ascertain how certain terms were meant to be used by the parties in the 1B Lease, as well as the related 1A and 1C Leases.**

In such circumstances, extrinsic or parol evidence may be introduced under North Carolina law to "show what was in the minds of the parties" at the time the written instrument was executed. *Root*, 272 N.C. at 587 (citing 30 Am. Jur. 2d, § 1069). In *Mosley & Mosley Builders, Inc. v. Landin, Ltd.*, a commercial lease provided for the lease of retail store premises located on the bottom level of a shopping mall, described in the lease as being located in "Phase I," an ambiguous

term that later gave rise to a conflict over whether the defendant landlord could require the plaintiff retailer to relocate. *Mosley & Mosley Builders, Inc. v. Landin, Ltd.*, 87 N.C. App. 438, 439-441, 361 S.E.2d 608, 609-10 (1987). The North Carolina Court of Appeals stated that "[a]n interpretation given a contract by the parties themselves prior to the controversy must be given consideration by the courts in ascertaining the meaning of the language used," and held that extrinsic evidence was admissible to establish the parties' intent as to the meaning accorded to the term "Phase I" as used in the lease agreement. *Id*. at 442 (citations omitted). The court found the trial court's failure to declare and explain the jury's duty to determine the meaning of "Phase I" was reversible error, and reversed and remanded for a new trial. *Id.* at 445.

> **2.    Monsanto does not refute applicable North Carolina law that, even if words in a lease seem clear and unambiguous, a latent ambiguity exists if their meaning is less than certain when viewed in the context of all the surrounding circumstances, and evidence of negotiations may be considered to ascertain the actual intent of the parties.**

In its response brief, Monsanto does not refute that North Carolina courts may find a "latent ambiguity . . . where the words of a written agreement are plain, but by reason of extraneous facts the definite and certain application of those words is found impracticable." *Myers v. Myers*, 213 N.C. App. 171, 176, 714 S.E.2d 194, 198 (2011), quoting *Miller v. Green*, 183 N.C. 652, 112 S.E. 417, 418

8

(1922).  In other words, "[e]ven though words in a lease *seem* clear and

unambiguous, *a latent ambiguity exists* if their *meaning is less than certain when*

*viewed in the context of all the surrounding circumstances*."  *Alchemy Commc'ns*

*Corp. v. Preston Dev. Co.*, 148 N.C. App. 219, 224, 558 S.E.2d 231, 234 (2002)

(emphasis added); *Jefferson-Pilot Life Ins. Co.*, 110 N.C. App. at 81-82.

 Nor does Monsanto attempt to challenge or distinguish the North

Carolina Supreme Court's decision in *Root v. Allstate Insurance Company*, *supra.*

In *Root*, the Court found that although the words of a lease agreement describing

the property were plain and intelligible, it was uncertain whether the basement of

the building was included in the terms of the written lease.  The appeals court held

that the courts below had erred in barring parol testimony as to prior negotiations,

which did not contradict or vary the terms of the lease but rather showed the intent

of the parties as to whether the entire building – including the basement – was to

be included in the lease.  *Root*, 272 N.C. at 588.

 Likewise, Monsanto does not refute that a lease agreement necessarily

"encompasses not only its express provisions but also all such implied provisions

as are necessary to effect the intention of the parties unless express terms prevent

such inclusion."  *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 569, 500

S.E.2d 752, 755-56 (1998).  As stated by the Court in *Strader*, citing *Lane v.*

*Scarborough*, 284 N.C. 407, 410, 200 S.E. 2d 622, 625 (1973), an

> ". . . intention or meaning in a contract may be manifested or conveyed either expressly or *__impliedly__*, and it is fundamental that that which is plainly or necessarily *__implied__* in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The *__policy of the law is to supply in contract what is presumed to have been inadvertently omitted__* or to have been deemed perfectly obvious by the parties."

*Id.* at 569 (emphasis added); s*ee also Bicycle Transit Auth. v. Bell*, 314 N.C. 219, 227 (1985) (the "heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time").

Applied here, and as further detailed below, there existed certain ambiguities as to whether the actual purpose and intent of the parties' Second Amendment to the 1B Lease (and as related the parties' 1A and 1C Leases) was to continue the existing or "current" Base Rent through the first two extension periods, i.e., "through 2020", leading up to the additional, post-2020 extension periods granted in the Second Amendment, as opposed to Monsanto's stated interpretation.

10

> **3. At a minimum, there is latent or other ambiguities in the relevant lease provisions between the parties which would preclude summary judgment for Monsanto at such an early procedural stage, and prior to ARE-108's requested discovery on disputed issues.**

In its brief, Monsanto attempts to address ARE-108's numerous arguments regarding ARE-108's view of the Base Rent requirements during the first two extension periods of the 1B Lease beginning in November 2010.[3] As previously noted, Monsanto's position regarding Base Rent owed (or not owed) under the 1B Lease during the first two extension periods beginning in November 2010 primarily relies upon the language of Section 41(a) of the original Lease dated April 3, 2000, while ARE-108's position regarding Base Rent owed during that same period primarily relies upon the subsequent language of Sections 1(a) and 4(e) of the Second Amendment to Lease dated November 14, 2007 (the "Second Amendment"). JA-I-221-312, 329-334.

First, regarding the Second Amendment to the 1B Lease (executed on Monsanto's behalf by Steve Padgette, Vice President, Biotechnology), ARE-108 contends that Section 1 is titled "Additional Right to Extend Term" and specifically addresses Monsanto's additional option rights to extend the lease term

---

[3] As previously discussed, ARE-108's arguments are necessarily handicapped by the fact that they are made absent receipt and review of the requested deposition and document discovery from Monsanto regarding the 1A, 1B and 1C Leases.

beyond year 2020 (the "Additional Extension Right", i.e., presuming that Monsanto exercises its two existing 5-year extension options under the original Lease). JA-I-329-330. Under Section 1(a) of the Second Amendment, the parties agreed that Monsanto could exercise its option to so further extend only "on the same terms and conditions as this Lease (other than Base Rent) by giving" written notice to landlord ARE-108 as specified. JA-I-329. By the specific reference to the existence of Base Rent *at the time of* the potential exercise of the Additional Extension Right in 2020, the Second Amendment suggests, evidences or explains that Base Rent is being paid by Monsanto to ARE-108 *immediately prior to the exercise* of any Additional Extension Right. Otherwise, the interpretation of Section 1(a) would not be logical as to the 1B rent stream over the agreed-period of the 1B lease; or, at a minimum, such language creates a patent ambiguity to be addressed via parol evidence as to the parties' actual intent regarding this "other than Base Rent" language.[4]

---

[4] Further, pursuant to Section 3(a) of the original 1B Lease, the parties defined "Base Rent" as monthly payments by Monsanto to ARE-108 in the sum of $26,250.00, or $315,000.00 annually, as adjusted going forward. JA-I-222. The reference to the contractual definition of "Base Rent" is not "mystifying", as Monsanto argues, as opposed to simply identifying where this defined term originates. Monsanto Br., p. 31. For sake of calculation, the Base Rent schedule for the first relevant extension period commencing November 1, 2010, and ending October 31, 2015, is set forth in ARE-108's letter to Messrs. Grable and Weavill of Monsanto dated April 9, 2010. JA-I-170.

In its brief, Monsanto contends that "Base Rent" is referenced in Section 1(a) of the Second Amendment *only* to "indicate that while the *other* 'terms and conditions' shall remain 'the same' during the Additional Extension Terms (2020-2024) as they were during the prior Term and Terms Extensions, the provisions governing Base Rent will *not* remain the same."  Monsanto Br., p. 30-31.  But that is only Monsanto's differing interpretation of the same language, albeit ambiguous language, and nothing more or less.  Simply stated, this language is not particularly clear, and at a minimum contains latent ambiguities which preclude summary judgment at such an early procedural stage (and without any discovery to provide necessary background as to the parties' negotiations and intent regarding 1B Lease, as well as the related 1A and 1C Leases, as well as the "consideration" for additional extension terms).

Second, and more specifically, ARE-108 contends that the next paragraph under Section 1(a) of the Second Amendment provides in pertinent part:

> Upon the commencement of any Additional Extension Term, ***Base Rent*** **shall be payable at the Market Rate** (as defined below). . . . As used herein, "Market Rate" shall mean the then market rental as determined by Landlord and agreed to by Tenant, which shall in no event be **less than the *Base Rent* payable *as of the date immediately preceding* the commencement of such**

> **Additional Extension Term** increased by 103%
> multiplied by such Base Rent. . . ."  (Emphasis added.)

JA-I-329.

   The logical purpose of ARE-108's citation to this quoted language within Section 1(a) of the Second Amendment – and specifically that "Market Rent" in the Additional Extension Term *shall be in no event less* than 103% of the Base Rent during the Extension Term at issue – is to show that Monsanto's view of its Base Rent obligation during the Extension Term is ambiguous and/or subject to further clarification.  To follow Monsanto's contention, what the parties meant by this language is that the parties agreed that the Base Rent payable for any Additional Extension Term would be no less than 103% of "zero" – which makes no sense in the context of the parties' 1A, 1B and 1C Leases, and extensions thereto.  In other words, why would parties use this illogical 103% language if the parties *actually intended* that the Base Rent payable "as of the date immediately preceding" the commencement of any Additional Extension Term would be "zero"?  Evidence (and/or admissions) regarding the parties' actual intent regarding this disputed language, and how did such intent relate to Base Rent owed during the Extension Term, should be the relevant inquiry.  At a minimum, such issues raise latent ambiguities or potential drafting mistakes, and/or require explanations why certain language was used (or not used) between the parties,

which should be addressed via parol evidence and not adjudicated by summary judgment by the court prior to requested discovery.

In its brief, Monsanto contends that this language under Section 1(a) of the Second Amendment has "no bearing on the status of Base Rent during the initial Term Extensions, "as it does not matter if the agreed-upon "Market Rate" is 103% of "zero" – as a "floor of zero does not make arriving at a reasonable 'Market Rate' [for Base Rent] impracticable."  Monsanto Br., pp. 31-32. However, at a minimum, whether or not a calculation is mathematically "impracticable" suggests an ambiguity (or, at least requires explanation) as to the parties' actual intent in using such illogical language to reference what Base Rent is "payable" by Monsanto during both the Extension Term and the later Additional Extension Term in the 1B Lease.

Third, ARE-108 contends that the fact that the Second Amendment presumes for the existence of – and Monsanto's payment of – Base Rent "payable *as of the date immediately preceding* the commencement of such Additional Extension Term" is further evidenced by certain of the parties' negotiations prior to the execution of the Second Amendment.  In June 2007, the parties discussed in written correspondence that the initial term of the new "Greenhouse Premises" Lease, absent earlier termination, would be November 30, 2024; as a result, the parties also discussed that the 1A and 1B Leases should likewise be extended to

remain co-terminus with the Greenhouse Premises lease.  JA-I-158-159.  On

July 12, 2007, as part of negotiations between David Kelpe of Monsanto and

Oliver Sherrill of Monsanto regarding the Second Amendment, Mr. Kelpe

addressed the following additional, post-2020 renewals for the 1A and 1B

premises, as follows:

> Lease Renewals for the 1A and 1B Premises -- 2 - 10
> year renewals, followed by 1 - 4 year renewal at the
> greater of Fair Market Value or 103% of the ***then***
> **current Base Rent**.  1A and **1B rent payments will be
> as stated in the *current* 1A and 1B leases
> *through* 2020**.  (We need language added that if the 1A
> and 1B lease terms are extended, there is no increase in
> the rent **Monsanto pays from what is provided in the
> *current* 1A and 1B leases**.)  (Emphasis added.)

JA-I-159, 162-163.

Soon thereafter, the parties entered into a Letter of Intent regarding

the 1A Lease and the Second Amendment to the 1B Lease dated July 25, 2007

(and executed on Monsanto's behalf by Mr. Padgette on August 1, 2007).  JA-I-

159, 165-168.  That Letter of Intent does not reference that Base Rent will be

"zero" under the 1B Lease "through 2020" (as Monsanto contends); instead, it

provides that rent payments will continue on through 2020 in the same amount as

stated in the "current" 1B Lease, as follows in pertinent part:

> Additional Lease Renewals Existing Premises.  In
> addition to the existing lease renewal options outlined in
> section 41 of the Lease dated August 1, 2006 (the 1A
> Lease) and section 41 of the Lease dated August 3, 2000

as assigned to Monsanto by that Assignment and Assumption Agreement dated March 23, 2005 (the 1B Lease) as amended, **Landlord agrees to amend the** 1A Lease and **1B Lease to provide for** 2 - 10 year and 1 - 4 year renewal options at the greater of Fair Market Value or **103% of the _then_ current Base Rent** upon no less than 9 months and not more than 12 months prior written notice from Tenant.  1A and **1B rent payments _will_ be as stated in the _current_** 1A and **1B leases _through_ 2020**.  Base Rent for the 2nd 10 year term extension and the 4 year term extension will be greater of fair market value or 103% of base rent . . .  (Emphasis added.)

JA-I-159, 166.

Specifically, the first sentence above makes reference to the retention of "the existing lease _renewal options_ outlined in . . . section 41 of the [1B Lease], as amended."  (Emphasis added.)   JA-I-159, 166.  The reference to _only_ "renewal options" (as opposed to renewal options _and_ rent payments during those extension periods, and given that ARE-108's "agree[ment] to amend the . . . 1B Lease" as to rent payments is _independently_ addressed thereafter) makes clear that the parties intended to retain the "renewal option" period rights in Section 41 but separately modify the rent payments owed during those first two extension periods.  The next sentence then gives further definition to the amended rent payments during the Section 41 extension term (i.e., Nov. 2010 through Oct. 2020), while again making absolutely no mention at all of any free Base Rent under section 41, as follows:

17

"1A and 1B rent payments *will* be as stated in the *current* 1A and 1B Leases *through* 2020".  JA-I-159, 166.

Given that as of November 14, 2007 (i.e., the date of the Second Amendment to the 1B Lease) the "current," then existing 1B Lease required Monsanto to pay Base Rent to ARE-108, the above sentence further evidences the parties' intent that the rent payments *through* 2020 would be the same Base Rent as being paid by Monsanto under the *current* 1B Lease.  Said another way, the only 1B rent payments that could be "stated" would be the "current" 1B rent payments as of November 2007.  Moreover, this parol evidence establishes that Base Rent through the 2020 extension period was to be paid, and thus is consistent with Section 1(a) of the Second Amendment to the 1B Lease (specifically, the language "which shall in no event be *less* than the Base Rent *payable as of the date immediately preceding* the commencement of such Additional Extension Term . . .").  JA-I-329.

In its brief, Monsanto contends that the above-referenced negotiations, if considered, "would not only fail to create ambiguity, they would squarely support Monsanto's reading of the lease language."  Monsanto's Br., p. 34. Specifically, Monsanto claims that the specific statement by a Monsanto's representative [Mr. Kelpe] regarding the negotiation of the Second Amendment that "1B rent payment[] will be as stated in current . . . 1B[] through 2020 . . .

18

*merely suggests* that *the writer sought* to maintain the [Base Rent] status quo through 2020." (Emphasis added.) Monsanto Br., p. 34. However, there is no logical rationale for that "mere suggestion", as Monsanto then completely ignores the end portion of its representative's statement that "[w]e need language added that if the 1A and 1B lease terms are extended, there is no increase in the rent Monsanto pays from what is provided in the *current* 1A and 1B leases." (Emphasis added.) JA-I-159, 162-63 (again, referencing the presumption that rent is to be paid by Monsanto going forward under the 1B Lease or, at a minimum, creating an ambiguity regarding the parties' actual intent on said payment).

Regarding the Letter of Intent regarding the 1A Lease and the Second Amendment to the 1B Lease dated June 25, 2007 (and executed by Monsanto on August 1, 2007), Monsanto makes no logical counter-argument to ARE-108's position that such Letter references only "renewal options" – as opposed to renewal options *and* rent payments to be made during the proposed extension periods. Further, Monsanto cannot explain why ARE-108's "agree[ment] to amend the 1A Lease and 1B Lease to provide for . . . the greater of Fair Market Value or *103% of the then current* Base Rent" is independently addressed by parties thereafter. Indeed, the negotiations more than suggest that the both Monsanto and ARE-108 intended to retain the "renewal option" period rights in Section 41 but separately amend the rent payments to be paid during the first two

19

extension periods.  Stated another way, given that as of November 14, 2007 (i.e.,

the date of the Second Amendment to the 1B Lease) the "current," then existing 1B

Lease required Monsanto to pay Base Rent to ARE-108, the parties' intent appears

clear (or, at least latent ambiguities exist) that the rent payments *through* 2020

would be the same Base Rent as being paid by Monsanto under the *current* 1B

Lease – as the only 1B rent payment that could be "stated" would be the "current"

1B rent payments as of the date of the Second Amendment, and consistent with the

language of Section 1(a) of said Second Amendment to the 1B Lease.  JA-I-329.

Fourth, ARE-108 argues that, in further support of its contractual

interpretation (and/or evidence of ambiguities), Section 4(e) of the Second

Amendment of the 1B Lease provides in full:

> Except as amended and/or modified by this Second
> Amendment, the Lease is hereby ratified and confirmed
> and all other terms of the Lease shall remain in full force
> and effect, unaltered and unchanged by this Second
> Amendment.  In the event of **any *conflict* between** the
> provisions of this Second Amendment and the provisions
> of the Lease, **the provisions of this Second Amendment
> *shall* prevail**.  Whether or not **specifically amended** by
> this Second Amendment, all of the terms and provisions
> of the Lease are ***hereby amended* to the extent *necessary*
> to give effect to the *purpose* and *intent* of this Second
> Amendment.**  (Emphasis added.)

JA-I-333.

As detailed above, and at a minimum, there exists latent ambiguities,

language conflicts and potential mistakes resulting from the parties' negotiations

and drafting of the 1B Lease (and amendments, as well as of the related 1A and 1C

Leases).  To deal with such matters, the parties agreed in the 1B Lease that in the

case of "any *conflict* between the provisions" of the Second Amendment (as

primarily relied upon by ARE-108) and the provisions of the underlying lease (as

primarily relied upon by Monsanto), the *provisions of the Second Amendment*

*would "prevail" or control regarding contractual interpretation*.  JA-I-333.

Further, the last sentence of Section 4(e) expressly states that even if not

"specifically amended" by the Second Amendment, all of the terms and provisions

of the lease "are hereby *amended* to the *extent necessary to give effect to the*

*purpose and intent* of this Second Amendment."  (Emphasis added.)  JA-I-333.  By

its discovery requests, ARE-108 sought, among other things, parol evidence as to

the parties' actual "purpose and intent" regarding the Second Amendment – which

could have been used to oppose Monsanto's summary judgment motion, but to

which ARE-108 was denied access.

    In its brief, Monsanto does not address the *unique* language of

Section 4(e) of the Second Amendment of the 1B Lease, other than to simply

conclude that no potential "conflict" or ambiguity exists between the different

provisions and amendments of said Lease.  Monsanto Br., pp. 35-36.  Specifically,

Monsanto ignores any factual application of the last sentence of Section 4(e)

regarding "whether or not *specifically amended* by this Second Amendment, all of

21

the terms and provisions of the Lease *are hereby amended to the extent necessary to give effect to the purpose and intent of this Second Amendment.*"  (Emphasis added.)  The existence of this express "to give effect to the purpose of intent" language within Section 4(e) in and of itself raises certain language conflicts and ambiguities under the 1B Lease, as well as permits ARE-108 to pursue appropriate discovery and admit parol evidence regarding the actual "purpose and intent" of the Second Amendment (regarding the payment of Base Rent between 2010 and 2020, and otherwise).

Accordingly, for the above reasons, the district court erred in granting Monsanto's motion for summary judgment and entering a monetary judgment in favor of Monsanto given the latent ambiguities and language conflicts in the lease documents, and without ARE-108 being first permitted to pursue its requested document and deposition discovery.  Under North Carolina law, even if words in a lease seem clear and unambiguous, a latent ambiguity exists if their meaning is less than certain when viewed in the content of all the surrounding circumstances, such that evidence of negotiations may be considered to ascertain the actual intent of the parties and meaning of the lease provisions.  In this case, at a minimum, there are latent or other ambiguities in the relevant lease provisions that would preclude summary judgment at such an early procedural stage, and/or create a triable issue as to whether the actual "purpose and intent" of the parties' Second Amendment to

22

the 1B Lease was to continue the existing or "current" Base Rent through the first two extension periods, i.e., "through 2020", leading up to the additional, post-2020 extension periods granted in the Second Amendment.

## RESPONSE BRIEF

## STATEMENT OF THE ISSUES

1.      Whether Monsanto's request for attorney fees under N.C. Gen. Stat. § 6-21.2 and applicable North Carolina law was properly denied, as the district court ruled on numerous grounds.

2.      Whether Monsanto served ARE-108 with the required statutory written notice under N.C. Gen. Stat. § 6-21.2(5) in order to seek recovery of attorneys' fees, as also required for any potential fee award to Monsanto.

## STATEMENT OF THE CASE

Regarding Monsanto's cross-appeal on attorneys' fees, plaintiff Monsanto, as tenant, and defendant ARE-108, as landlord, are parties to three leases for commercial premises in Research Triangle Park in North Carolina.  The three leases, as amended, are referenced as the "1A Lease" (108 Alexander Drive), the "1B Lease" (110 TW Alexander Drive), and the "1C Lease" (112 TW Alexander Drive).  Beginning in 2010, a lease interpretation dispute regarding future rent arose between Monsanto and ARE-108 relating to payments due by Monsanto under the 1B Lease (hereinafter, the "1B Lease") beginning November 1, 2010, as evidenced by correspondence between Monsanto and ARE-108 between April 2010 and November 2010.  Ultimately, as stated in Monsanto's letter dated November 17, 2010, tenant Monsanto *unilaterally* paid "under protest"

24

to landlord ARE-108 the November 2010 rent (including late charges) of $40,919.75, and thereafter Monsanto continued to pay monthly rent to ARE-108 through mid-2014.

In conjunction with this dispute, on November 19, 2010, Monsanto filed a Complaint for declaratory relief against ARE-108 regarding the appropriate rent *owed* by Monsanto *to* ARE-108 under the 1B Lease. JA-I-14-44. On April 6, 2011, Monsanto filed a motion for summary judgment with the Court regarding its purported interpretation of the parties' underlying lease agreements. In response, on May 9, 2011, ARE-108 opposed the motion for summary judgment on numerous grounds, as previously addressed.

On March 25, 2013, after the passage of many months, Magistrate Judge L. Patrick Auld issued the "Memorandum Opinion/Recommendation" regarding Monsanto's motion for summary judgment, wherein it was recommended that said motion for summary judgment be granted and that judgment be entered against defendant ARE-108 as stated in the "Conclusion" section. JA-II-466-478. Moreover, in a *footnote* regarding any potential, future award of attorneys' fees, Magistrate Judge Auld noted that "it would appear that the Lease would constitute 'evidence of indebtedness' under N.C. Gen. Stat. § 6-21.2 such that attorney's fees would be authorized at least up to 15% of the outstanding balance on the Lease." JA-II-476 (footnote 5). Further, as stated in

25

the "Conclusion" section, Magistrate Judge Auld recommended that the Court "(3) enter judgment awarding Plaintiff its attorneys' fees and costs pursuant to Section 44(k) of the Lease *as permitted by N.C. Gen. Stat. § 6-21.2(2)*." JA-II-478 (emphasis added).

On April 10, 2013, ARE-108 timely objected to the Memorandum Opinion/Recommendation, and respectfully requested that the district court make a *de novo* determination upon the record as well as ARE-108's pending discovery requests. JA-II-479-498. Regarding Magistrate Judge Auld's footnote on any proposed, future attorneys' fees award, ARE-108 did not make any specific objection given that it agreed that any such award would *only be made to the extent "as permitted by N.C. Gen. Stat. § 6-21.2(2)"* and, logically, applicable law regarding such statute. (Moreover, the subject of any attorneys' fee award was not raised by either the court or counsel at the oral argument on June 12, 2013 before Judge William L. Osteen, Jr. as such issue was presumably reserved for later briefing should the Court – following its *de novo* review – decide to adopt the Magistrate Judge's Memorandum Opinion/Recommendation.)

On June 27, 2013, the district court issued an Order which adopted the Magistrate Judge's Memorandum Opinion/Recommendation, and likewise stated that Monsanto "is entitled to an award of attorneys' fees pursuant to Section 44(k) of the Lease *as permitted by N.C. Gen. Stat. § 6-21.2(2)*." JA-II-615-619

26

(emphasis added). However, before making a determination as to any entitled fees, the district court requested that ARE-108 and Monsanto "address several issues related to N.C. Gen. Stat. § 6-21.2(2) and its application to the instant case," with legal briefs to be filed with the Court by no later than August 1, 2013. JA-II-617. Specifically, the court noted the two issues to be addressed (but did not limit any other relevant or required analysis of N.C. Gen. Stat. § 6-21.2(2) to this specific case):

> (1)     Whether N.C. Gen. Stat. § 6-21.2(2) mandates an award of 15% of the "outstanding balance" as attorneys' fees or whether it merely serves as a cap on such fees; and
>
> (2)     The amount of the "outstanding balance" in this case, that is, whether the outstanding balance is the amount of base rent and related charges paid under protest by plaintiff Monsanto or some other amount. JA-II-617-618.

Both parties timely submitted briefing regarding factual and legal issues as "related to N.C. Gen. Stat. § 6-21.2(2) and its application to the instant case," as requested by the district court. JA-II-620-655. On June 23, 2014, upon detailed review of the unique facts, analysis of N.C. Gen. Stat. 6-21.2, and applicable North Carolina law, the district court issued a 20-page "Memorandum Opinion and Order" wherein it denied Monsanto's request for attorneys' fees against ARE-108 because N.C. Gen. Stat. § 6-21.2(2) does not permit any such recovery under the specific facts of this case, among numerous other grounds. JA-II-705-724.

27

## SUMMARY OF THE ARGUMENTS

The district court's decision to deny Monsanto's request for attorneys' fees under N.C. Gen. Stat. § 6-21.2(2) should be affirmed.  In North Carolina, the law is clear that litigants cannot recover attorneys' fees, unless expressly provided for by statute.

For the reasons detailed *infra*, N.C. Gen. Stat. § 6-21.2 is not applicable to this specific factual case because: (1) Monsanto is not "owed" any debt by ARE-108 under the 1B Lease, as required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto; (2) Monsanto is not "owed" any "mature" debt by ARE-108 under the 1B Lease, as required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto; (3) Monsanto is not "owed" any "outstanding balance" (as defined) by ARE-108 under the 1B Lease, as also required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto; (4) Monsanto did not serve ARE-108 with any required written notice under N.C. Gen. Stat. § 6-21.2(5) in order to seek recovery of attorneys' fees, as required for any potential fee award to Monsanto; (5) in this case, any award to Monsanto of attorneys' fees would not serve the stated purposes of N.C. Gen. Stat. § 6-21.2; and (6) under any scenario, there was no secondary and/or separate agreement between the parties which supported an award of attorneys' fees in this matter.

As a general matter, however (although moot here, as addressed *infra*), in cases where attorneys' fees are expressly permitted under N.C. Gen. Stat. § 6-21.2(2), North Carolina courts have the judicial discretion under recent law to award attorneys' fees less than 15% of the "outstanding balance" owed by the debtor.

**ARGUMENT**

**II.    THE DISTRICT COURT CORRECTLY DENIED MONSANTO'S REQUEST FOR ATTORNEYS' FEES AGAINST ARE-108 BECAUSE N.C. GEN. STAT. § 6-21.2(2) AND APPLICABLE LAW DO NOT PERMIT SUCH RECOVERY UNDER THE SPECIFIC FACTS OF THIS CASE**

**A.    General Background, and the District Court's Memorandum Opinion and Order Denying Monsanto's Request for Attorneys' Fees under N.C. Gen. Stat. § 6-21.2**

As Monsanto must (and does) acknowledge, the long-standing rule in North Carolina is that, unless a statute expressly provides otherwise, the parties to litigation are responsible for their own attorney fees. *Hicks v. Albertson*, 284 N.C. 236, 238, 200 S.E.2d 40, 42 (1973); *Stevenson v. Barlett*, 177 N.C. App. 239, 244-45, 628 S.E.2d 442, 445 (2006) (attorney fees "in this State are entirely creatures of legislation, and without this they do not exist"). In its detailed 20-page Memorandum and Order, the district court correctly set forth numerous grounds and reasons why Monsanto's request for attorneys' fees should be denied as

29

*clearly not "permitted by N.C. Gen. Stat. § 6-21.2(2)"* under the specific facts of

this case, as summarized by the court as follows:

> Plaintiff [Monsanto] contends it meets both the statutory
> and contractual requirements for an award of attorneys'
> fees. Specifically, Plaintiff argues N.C. Gen. Stat. § 6-
> 21.2 provides the statutory authorization and
> Section 44(k) of the lease satisfies the contractual
> mandate for awarding attorneys' fees to the 'Prevailing
> Party.' ***This court disagrees with both of Plaintiffs'
> conclusions***. Each is addressed in turn below. . . .
> North Carolina Gen. Stat. § 6-21.2 does ***not, by its terms,
> apply*** to the ***recovery of lease payments made under
> protest and ultimately remitted after judgment*** as
> occurred in this case.

JA-II-711-712 (emphasis added).

In its brief, Monsanto entirely fails to refute the district court's factual

and legal analysis under applicable North Carolina statutory and case law, upon

which the court correctly denied Monsanto's request for attorneys' fees against

ARE-108. Specifically, N.C. Gen. Stat. § 6-21.2(2) is not applicable to this

specific case because: (1) Monsanto is not "owed" any debt by ARE-108, as

required under N.C. Gen. Stat. § 6-21.2 for any potential attorneys' fee award to

Monsanto; (2) Monsanto is not "owed" any "mature" debt by ARE-108, as

required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto;

(3) Monsanto is not "owed" any "outstanding balance" (as defined) by ARE-108,

as also required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to

Monsanto; (4) Monsanto did not serve ARE-108 with any required written notice

under N.C. Gen. Stat. § 6-21.2(5) in order to seek recovery of attorneys' fees, as required for any potential fee award to Monsanto; (5) in this case, any award to Monsanto of attorneys' fees would not serve the stated purposes of N.C. Gen. Stat. § 6-21.2; and (6) under any scenario, there was no secondary and/or separate agreement between the parties which supported an award of attorneys' fees in this matter.

As a general matter, however (although moot here, as detailed *infra*), in cases where attorneys' fees are expressly permitted under N.C. Gen. Stat. § 6-21.2, North Carolina courts have the judicial discretion under recent case law to award attorneys' fees less than 15% of the "outstanding balance" owed by the debtor.

> **B.     Under The Applicable Facts And Law, The District Court Correctly Denied Monsanto's Request for Attorneys' Fees Under N.C. Gen. Stat. § 6-21.2.**

Again, the general rule under North Carolina law is that even where parties have contractually obligated themselves to pay attorney fees, there *must* still be express statutory authority for their recovery.  Thus, even though attorneys' fees may be expressly provided for by the lease contract, they must also be expressly authorized by statute.  *See Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980) ("the general rule has long obtained that a successful litigant may not recover attorneys' fees . . . unless such a

31

recovery is expressly authorized by statute"); *WRI/Raleigh, L.P. v. Shaikh*, 183

N.C. App. 249, 257, 644 S.E.2d 245, 250 (2007); *Hicks v. Albertson*, *supra*, 284

N.C. at 238, 200 S.E.2d at 42; *Bombardier Capital, Inc. v. Lake Hickory*

*Watercraft, Inc.*, 178 N.C. App. 535, 540-41, 632 S.E.2d 192, 196 (2006).

However, N.C. Gen. Statute § 6-21.2 is an exception to this general rule, as it

deems "[o]bligations to pay attorneys' fees upon any note, conditional sale

contract, or other evidence of indebtedness… valid and enforceable. . . .", but *only*

in certain cases.

Further, under N.C. Gen. Stat. § 6-21.2, contract provisions that

"[provide] for attorneys' fees in some specific percentage of the '*outstanding*

*balance*' are treated under subsection (1) of said statute, while a provision that

does not specify a percentage of the "outstanding balance" are treated under

subsection (2).  As such, subsection (1) provides that if a contract provision sets

attorneys' fees at a specific percentage of the "outstanding balance," that

percentage "shall be valid and enforceable up to but not in excess of fifteen percent

(15%) of said 'outstanding balance.'"  Under subsection (2), if a contract provision

"provides for the payment of reasonable attorneys' fees by the *debtor*, without

specifying any specific percentage, such [reasonable attorneys' fee] provision shall

be construed to mean fifteen percent (15%) of the '*outstanding balance*' owing on

said note, contract or other evidence of indebtedness." N.C. Gen. Stat. § 6-21.2(1) & (2) (emphasis added).

Applied here, Section 44(k) of the 1B Lease between ARE and Monsanto references "all reasonable fees and costs incurred by the Prevailing Party in connection with such legal services." As Section 44(k) of the 1B Lease does not define "all reasonable fees" with a specific percentage, subsection (1) of § 6-21.2 clearly does not apply. However, for the numerous reasons detailed below, the district court was correct that subsection (2) of § 6-21.2 also clearly does not apply to this specific case under applicable law. Specifically, the court correctly held that Monsanto may not recover attorneys' fees from ARE-108 under N.C. Gen. Stat. § 6-21.2, and for at least the following reasons:

(1) Monsanto is not "owed" any debt by ARE-108 under the 1B Lease, as required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto;

(2) Further, Monsanto is not "owed" any "mature" debt by ARE-108 under the 1B Lease, as required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto;

(3) Monsanto is not "owed" any "outstanding balance" (as defined) by ARE-108 under the 1B Lease, as also required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto;

(4) Monsanto did not serve ARE-108 with any required written notice under N.C. Gen. Stat. § 6-21.2(5) in order to seek recovery of attorneys' fees, as required for any potential fee award to Monsanto;

33

(5)  In this case, any award to Monsanto of attorneys' fees would not serve the stated purposes of N.C. Gen. Stat. § 6-21.2; and

(6)  Under any scenario, there was no secondary and/or separate agreement between the parties which supported an award of attorneys' fees in this matter.

Accordingly, these six reasons are now addressed in order, as follows.

> **1.    Under applicable law, only a party "owed" debt under a contract can potentially recover attorneys' fees under N.C. Gen. Statute § 6-21.2; as the district court correctly held, Monsanto was not "owed" debt by ARE-108 under the 1B Lease under the specific facts of this case.**

North Carolina law limits any attorneys' fee recovery under § 6-21.2(2) to the party "*owed*" the debt, as opposed to a tenant like Monsanto who unilaterally pays rent "under protest" to its landlord ARE-108 on a commercial lease.  *See Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 12, 545 S.E.2d 745, 752, *aff'd*, 354 N.C. 565, 556 S.E.2d 293 (2001).

In *Lee Cycle Center*, a purchaser of a recreational-vehicle sales business sued the seller for breach of contract arising out of asset purchase agreement.  The plaintiff/purchaser won the suit, but the Court of Appeal reversed the purchaser's award of attorneys' fees under N.C. Gen. Stat. § 6-21.2 on the grounds that "the parties *owed* the debt, Defendants, are not [the parties] seeking to recover attorney's fees." *Id.* (emphasis added).  Specifically, after quoting § 6-21.2 as follows, the Court in *Lee Cycle Center* held:

34

Obligations to pay attorney[']s[ ] fees upon any note, conditional sales contract or other evidence of indebtedness . . . shall be valid and enforceable, and collectible as part of such **debt**, if such note, contract or other evidence of indebtedness be collected . . . after **maturity**. . . .

Thus, section 6-21.2 allows (1) the party **owed** the debt (2) to recover attorneys' fees (3) after the debt has **matured** (4) provided it is written in the note, conditional sale contract, or other evidence of indebtedness. N.C.G.S § 6-21.2; *see First-Citizens Bank & Tr. Co v. 4325 Park Rd. Assocs. Ltd.*, 133 N.C. App. 153, 157, 515 S.E.2d 51, 54 (1999) (attorney's fees in the event of default by the maker of a promissory note); *RC Assocs. v. Regency Ventures, Inc.*, 111 N.C. App. 367, 373-74, 432 S.E.2d 394, 398 (1993) (one purpose of N.C. Gen. Stat. § 6-21.2 "is to allow the debtor a last chance to pay the outstanding balance to avoid litigation and the award of attorneys' fees").

In this case, the parties **owed** the debt, Defendants, are **not** seeking to recover attorneys' fees. In any event, the debt has **not matured**. Accordingly, section 6-21.2 **cannot form the statutory basis to award** Plaintiffs attorney's fees, thus, the trial court **erred** in awarding Plaintiff attorneys' fees.

143 N.C. App. at 12, 545 S.E.2d at 752 (emphasis added).

Applied here, *Lee Cycle Center* governs with respect to Monsanto's request for attorneys' fees under § 6-21.2(2). In both instances, the party *owing* debt under the contract initiated the lawsuit and claimed attorneys' fees as the prevailing party. Just as the purchaser in *Lee Cycle Center* could not recover attorneys' fees under the asset purchase agreement, Monsanto, as the tenant,

cannot recover attorneys' fees under the 1B Lease. As the landlord, ARE-108 was the *only* party *owed* rent payments by Monsanto under the 1B Lease. And here, Monsanto did not initiate an action to enforce a monetary obligation *owed* to it by ARE-108 under the 1B Lease; instead, it initiated a declaratory relief action to interpret the 1B Lease, while at the same time voluntarily and unilaterally paying rent "under protest" under the 1B Lease to ARE-108.

As further support, two recent North Carolina decisions interpreted N.C. Gen. Stat. § 6-21.2 as governing only attorneys' fees sought by the creditor who was "*owed*" debt. In *In re Vogler Realty, Inc.*, 365 N.C. 389, 396, 722 S.E.2d 459, 464 (2012), the Supreme Court denied a trustee's claim for attorneys' fees, holding that "section 6-21.2 governs *only* attorney's fees for the *creditor's* attorney." *Id*. (Emphasis added.) Likewise, in *F.D.I.C. v. Cashion*, 2012 WL 1098619 (W.D.N.C. Apr. 2, 2012), *aff'd*, 720 F.3d 169 (4th Cir. 2013), the court interpreted § 6-21.2 to award attorneys' fees to a creditor in "actions to enforce obligations *owed* under a promissory note." *Cashion* at *8 (emphasis added). As stated by the district court in its "Memorandum Opinion and Order" filed June 23, 2014:

> Here, on these facts, ***Plaintiff*** [Monsanto] ***as well as the debt recovered fall outside the scope*** of N.C. Gen. Stat. § 6-21.2, and, therefore, this section ***does not form the statutory basis*** for Plaintiff's attorneys' fees claim on the facts presently before this court.

36

JA-II-715 (emphasis added).

In its brief, Monsanto fails to make any citation to or refute the *Lee Cycle Center, In re Vogler or F.D.I.C.* cases (although they were cited in the district court's opinion, as well as ARE-108's prior briefing regarding attorney fees), but instead makes overbroad debtor/creditor "policy" arguments and passing references to inapplicable cases.  *See*, *e.g.*, *Pantry Pride Enters., Inc. v. Glenlo Corp.*, 729 F.2d 963, 965 (4th Cir. 1984) (an "overpayment" case under Maryland law which did not address attorney fees); *Conille v. Sec'y of Housing & Urban Dev.*, 840 F.2d 105, 115 (1st Cir. 1988) (an "warranty of habitability" case under California law which did not address attorney fees); *Raintree Corp. v. Charlotte*, 49 N.C. App. 391, 397, 271 S.E.2d 524, 528 (1980) (a breach of sewer services contract under North Carolina law which did not address attorney fees); and *Childs v. Eltinge*, 105 Cal. Rptr. 864, 871 (Cal. Ct. App. 1973) (an unlawful detainer case under California law which did not address attorney fees).

Accordingly, given that Monsanto did not initiate an action as a creditor to enforce a debt *owed* to it by ARE-108 under the 1B Lease, Monsanto cannot recover attorneys' fees under N.C. Gen. Stat. § 6-21.2 and applicable law.

37

> **2.**     **As the district court correctly held, Monsanto is not "owed" any "mature" debt by ARE-108 under the 1B Lease, as required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto.**

In addition to limiting the application of N.C. Gen. Stat. § 6-21.2 to the party *owed* debt, *Lee Cycle Center* limited the statute to the collection of debt that has "matured." 143 N.C. App. at 12, 545 S.E.2d at 752. As noted, the first paragraph of § 6-21.2 requires that the debt or "evidence of indebtedness be collected by or through an attorney at law *after maturity*. . . ." (emphasis added).

Specifically, in reversing the trial court's award of attorneys' fees to plaintiff under an asset purchase agreement, the Court of Appeals in *Lee Cycle Center* explained that "the debt has not matured." *Id*. By definition, debt "matures" when a party defaults by missing a payment. *See Kindred of N. Carolina, Inc. v. Bond*, 160 N.C. App. 90, 104-05, 584 S.E.2d 846, 855 (2003). Further, as the district court stated here:

> Use of the term "maturity" suggests a contractual due date. *See Webster's New College Dictionary* (3rd ed. 2008) ("2a. The time at which an obligation, as a note or bond, is due."); *Black's Law Dictionary* (9th ed. 2009) (defining "date of maturity" as "[t]he date when a debt falls due, such as a debt on a promissory note or bond").

JA-II-716.

In its brief, Monsanto again ignores the *Lee Cycle Center* decision regarding "matured debt", but instead makes overbroad policy arguments and cites

38

to an irrelevant treatise on bankruptcy law and another inapposite case.  *See*, *Bank One, N.A. v. A. Levet Props. P'ship*, 2004 U.S. Dist. LEXIS 14236, at *11 (E.D. La. July 21, 2003) (a post-merger case under Louisiana law that never used the words "mature", "matured", or "debt", nor addressed attorney fees).  Further, instead of addressing *Lee Cycle Center*, Monsanto erroneously claims that the district court misconstrued *Kindred of N.C., Inc. v. Bond*, 160 N.C. App. 90, 104-05, 584 S.E.2d 846, 855 (N.C. Ct. App. 2003).  However, the district court did no such thing; all the court said is that, by definition, a debt "matures" when a party defaults by missing a scheduled payment, while citing to pages in *Kindred* that contain the following finding:  "Plaintiffs defaulted by missing the 30 September 1999 payment, and the note allowed for acceleration.  At that point, the note had indeed matured."  *Id.*

Accordingly, given that tenant Monsanto did not initiate an action as a creditor to collect any "matured" debt from landlord ARE-108, and N.C. Gen. Stat. § 6-21.2 by its own terms only applies to "mature" debt, Monsanto cannot recover attorneys' fees under N.C. Gen. Stat. § 6-21.2 and applicable law.

**3.**    **As the district court correctly held, as supported on many grounds, Monsanto was not "owed" any "outstanding balance" (as defined) by ARE-108 under the 1B Lease, as required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto.**

The district court's first question regarding "outstanding balance" is placed into context by the simple fact that Monsanto was not "*owed*" any "outstanding balance" by ARE-108 at the time Monsanto filed suit in November 2010, as also required under N.C. Gen. Stat. § 6-21.2 for any potential fee award to Monsanto.

Upon review, subsection (2) of § 6-21.2 states that the prevailing party is entitled to reasonable attorneys' fees up to 15% of the "'outstanding balance' owing on said note, contract or other evidence of indebtedness." N.C. Gen. Stat. § 6-21.2(2). Section 6-21.2(2) does not specifically define what is meant by "outstanding balance" and provides little guidance as to what may constitute an "outstanding balance" between Monsanto and ARE-108 in a lease interpretation dispute. However, subsection (3) of § 6-21.2, which relates to a "loan of money to the debtor," expressly defines "outstanding balance" as follows:

> . . . the "outstanding balance" shall mean the principal and interest ***owing at the time suit is instituted*** to enforce any security agreement securing payment of the debt and/or to collect said debt.

N.C. Gen. Stat. § 6-21.2(3) (emphasis added).

Likewise, subsection (4) of § 6-21.2, which relates to "conditional sales contracts and other such security agreements," expressly defines "outstanding balance" as follows:

> . . . the "outstanding balance" shall mean the "time price balance" **_owing as of the time suit is instituted_** by the secured party to enforce the said security agreement and/or to collect said debt.

N.C. Gen. Stat. § 6-21.2(4) (emphasis added).

Applied here, and as the district court correctly held, at or as of the time Monsanto filed suit in November 2010, ARE-108 did not have any "outstanding balance" (of any type) *owed* to Monsanto, nor did Monsanto institute the suit in November 2010 to collect any debt *owed* by ARE-108 to Monsanto. What did occur is Monsanto filed a lawsuit for declaratory relief against ARE-108 regarding the rent to be paid under the 1B Lease, and began voluntarily and unilaterally paying rent "in dispute" as of November 2010. As such, as of the time suit was instituted by Monsanto, there was simply no "outstanding balance" owed by ARE-108 to Monsanto to be calculated in this case. As the district court explained and held:

> Here, Plaintiff [Monsanto], as a lessee, **_owed_** Defendant [ARE-108] **_no principal or interest at the time the suit was filed_**. Moreover, the suit was for declaratory relief, not to collect or enforce a security agreement. As a result, the "**_outstanding balance_**" owed pursuant to the lease agreement is **_zero_**. A zero outstanding balance results in a statutory allowance of zero. This court

41

> therefore concludes that no attorneys' fees are awardable
> under the lease agreement.

JA-II-717 (emphasis added).

In its brief, Monsanto entirely fails to address and/or challenge the district court's analysis of the "outstanding balance" requirement under § 6-21.2, nor ARE-108's prior briefing to the court addressing such requirement under § 6-21.2. Instead, Monsanto states in conclusory fashion that the "outstanding balance" owed to Monsanto here is "the amount of the [July 22, 2014 amended] judgment awarded by the district court, which is comprised of overpayment under protest plus prejudgment interest", while summarily citing to three inapposite cases. Monsanto Br., pp. 55-56. Upon review, none of these three cases relate in any manner to rent payments made under protest by a lessee (particularly, after the complaint was filed), but do quote relevant language in N.C. Gen. Stat. § 6-21.2 that the "outstanding balance" means "the principal and interest *owing at the time suit is instituted*" to enforce a debt or other obligation. *See* Monsanto Br., pp. 55-56, citing *Spencer v. Hutchens*, 2006 U.S. Dist. LEXIS 83784, at *3 (M.D.N.C. Nov. 16, 2006) (citing to § 6-21.2(3)); *N.C. Indus. Capital LLC v. Clayton*, 649 S.E.2d 14, 23 (N.C. Ct. App. 2007) (citing to § 6-21.2(3) & (4)); *Southland Amusements & Vending, Inc. v. Rourk*, 545 S.E.2d 254, 258 (N.C. Ct. App. 2001).

Accordingly, without an "outstanding balance" owing by ARE-108 to Monsanto at the time Monsanto filed suit in November 2010, the district court

42

correctly held that Monsanto has no statutory basis to recovery any attorneys' fees

against ARE-108 under N.C. Gen. Stat. § 6-21.2.

> **4.      Monsanto did not serve ARE-108 with any required written notice under N.C. Gen. Stat. § 6-21.2(5) in order to seek recovery of attorneys' fees, as required for any potential fee award to Monsanto.**

Further, on yet another statutory basis, Monsanto is precluded from

recovering attorneys' fees from ARE-108 given its failure to serve ARE-108 with

required statutory written notice under N.C. Gen. Stat. § 6-21.2(5) to seek recovery

of such fees.[5]

Section 6-21.2(5) provides that a party seeking attorneys' fees on a

writing "evidencing an unsecured debt" (notwithstanding that no such "debt" exists

here)

> . . . ***shall***, after ***maturity*** of the obligation by default or otherwise, ***notify*** the maker, debtor, account debtor, endorser or party sought to be held on such obligation **that the provisions relative to payment of attorneys' fees in addition to the "*outstanding balance*" shall be enforced** and that such maker, debtor, account debtor, endorser or party sought to be held on said obligation **has *five days* from the mailing of such notice to pay the "outstanding balance" without the attorneys' fees**.  If such party shall pay the "*outstanding balance*" in full

---

[5] At the conclusion of its "Memorandum Order and Opinion", the district court stated that it did "not find it necessary to reach this [N.C. Gen. Stat. § 6-21.2(5)] issue because of the other grounds upon which attorneys' fees are denied." JA-II-724.  Accordingly, and in further support of the court's denial of attorney fees, ARE-108 again addresses Monsanto's failure to provide such required statutory notice to ARE-108 under § 6-21.2(5).

43

> before the expiration of such time, then the obligation to
> pay the attorneys' fees shall be void, and no court shall
> enforce such provisions.

N.C. Gen. Stat. § 6-21.2(5) (emphasis added).

The applicable law is clear that the "statutory use of 'shall' renders [this § 6-21.2(5)] provision requiring notice *mandatory*."  *Blanton v. Sisk*, 70 N.C. App. 70, 74, 318 S.E.2d 560, 564 (1984) (*overruled on other grounds*, 105 N.C. App. 70, 318 S.E.2d 564 (1984)) (emphasis added); *see* also *Brooks Millwork Company v. Levine*, 204 N.C. App. 595, 696 S.E.2d 924, 2010 WL 2366541, at *2 (N.C. App. June 15, 2010) (quoting *Blanton*), and *F.D.I.C. v. Cashion*, 2012 WL 1098619, at *8 (Apr. 2, 2012) (also quoting *Blanton*).  In overturning an award of attorneys' fees to the plaintiff by the trial court, the court of appeal in *Blanton* held:

> Although the form of notice required is not specified by
> the statute, it is clear that the notice ***must*** be written and
> that such notice ***must*** advise the debtor of his right under
> G.S. 6-21.2(5) to pay the outstanding balance on the note
> without incurring attorneys' fees.

70 N.C. App. at 74-75, 318 S.E.2d at 564 (emphasis added).

Further, the court in *Blanton* made clear that merely serving a complaint does not give statutory notice, as follows:

> Notwithstanding the clear language of the statute,
> plaintiffs argue that notice for the purposes of 6-21.2(5)
> was given when they served their complaint upon the
> defendants.  We do not find any authority in support of

this contention in our State court jurisdiction, and plaintiffs direct us to none. . . . Hence, we are of the view . . . that the serving of the **complaint** upon the defendants **seeking** to recover attorneys' fees does **not** satisfy the requirements of G.S. 6-21.2(5).

70 N.C. App. at 75, 318 S.E.2d at 564 (emphasis added).

Moreover, and more specifically, the required statutory notice must state both the "outstanding balance" owed and that the receiving party has "five days" from the mailing of the notice to pay the "outstanding balance" without incurring attorneys' fees.  As held by the court of appeal in *Davis Lake Comty. Ass'n. v. Feldmann*, 138 N.C.App. 292, 530 S.E.2d 865 (2000):

> Before attorney's fees can be collected on a debt, our statutes require the creditor to notify to debtor in writing that "the provisions relative to the payment of attorneys' fees in addition to the '***outstanding balance***' shall be enforced and that [the debtor] has ***five days*** from the mailing of such notice to ***pay the 'outstanding balance' without the attorneys' fees***."  N.C. Gen. Stat. § 6-21.2(5).  Thus, the mere delinquency of a debt is not sufficient to trigger the award of attorneys' fees under our statutes.  Defendants must have been given written notice plus a five-day grace period to pay their outstanding balance.  Plaintiff's forecast of evidence nowhere establishes that this requirement was satisfied.  Absent evidence showing it did comply with this notice requirement, any award of attorney's fees is unauthorized.  *McGuinnis Point Owners Ass'n, Inc. v. Joyner*, 135 N.C. App. 752, 756-57, 522 S.E.2d 317, 320 (1999).

138 N.C.App. at 297, 530 S.E.2d at 869 (emphasis added).

45

Likewise, as held by the *McGuinnis* court on the subject of the

required statutory notice:

> Our ***first consideration*** on the award of attorneys' fees is
> ***the explicit notice requirement*** in section 6-21.2(5).
> Specifically, plaintiffs ***must have provided written notice***
> ***to defendants stating that defendant had five days from***
> ***the mailing of such notice to pay the assessments***
> ***without incurring attorneys' fees***.  [Citation.]
> Defendants argue plaintiffs failed to fulfill this notice
> requirement, making the trial court's award of attorneys'
> fees improper.  Nothing in the record indicates that
> plaintiffs did or did not provide defendants written notice
> in accord in section 6-21.2(5), nor is there a finding
> either way.  ***Absent a finding of notice, the trial court***
> ***was not authorized to award attorneys' fees*** under
> section 6-21.2.

135 N.C. App. at 757, 522 S.E.2d at 320 (emphasis added).

Applied here, it cannot be disputed that Monsanto *never* gave ARE-

108 any required statutory written notice under § 6-21.2(5) regarding any

purported "*outstanding balance*" owed to Monsanto and/or any "*five days*" for

ARE-108 to pay any "outstanding balance without attorneys' fees."  For this

further reason, Monsanto is not entitled to recover attorneys' fees under § 6-21.2 in

this case.  As also held by the court of appeal in *Brooks Millwork Co. v. Levine*,

*supra*:

> Plaintiff does not contend that it satisfied the notice
> provision of North Carolina General Statutes, section 6-
> 21.2(5).  Because we find nothing in the record that
> would constitute notice, and because plaintiff has not
> directed us to such notice, we hold that plaintiff has ***not***

46

> *met the requirements* of the statute.  Having held that
> plaintiff is *not entitled* to attorneys' fees pursuant to
> North Carolina General Statutes, section 6-21.2, we need
> not address whether the trial court abused its discretion in
> awarding plaintiff no attorneys' fees.

2010 WL 2366541 at *3 (emphasis added).  *See also F.D.I.C. v. Cashion*, 2012

WL 1098619 at *8 ("Having failed to satisfy the notice requirement of N.C. Gen.

Stat. 6-21.2, the Court concludes that the Plaintiff is not entitled to recovery its

attorneys' fees in this action.")

In its brief, Monsanto argues in conclusory fashion – and for the first

time – that its "November 17 Notice Letter" provided ARE-108 with "the requisite

notice under Section 6-21.2(5)."  Monsanto Br., p. 20.  However, a cursory review

of Monsanto's letter evidences that no such required "notice under Section 6-

21.2(5)" was ever given to ARE-108, nor could be given under the existing facts.

Specifically, and again, the letter makes no reference to any "outstanding balance"

owed to Monsanto (because no such "balance" existed), and/or any "five days" for

ARE-108 to pay any such non-existent "outstanding balance."  JA-II-43-44.

Accordingly, given its failure to provide required statutory written

notice to ARE-108 under N.C. Gen. Stat. § 6-21.2(5), Monsanto is not entitled to

recover attorneys' fees from ARE-108 in this case.

**5.      As the district court correctly held, any award to Monsanto of attorneys' fees would not serve the stated purposes of N.C. Gen. Stat. § 6-21.2 in this case.**

As stated by the district court in its Memorandum Opinion and Order, it is clear that "North Carolina's public policy counsels against awarding attorneys' fees unless expressly authorized by statute," citing to *State Wholesale Supply, Inc. v. Allen*, 30 N.C. App. 272, 276, 227 S.E.2d 120, 123 (1976) ("The jurisprudence of North Carolina traditionally has frowned upon contractual obligations for attorneys' fees as part of the costs of an action."). JA-II-13-14. *See also*, *Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814-15 (1980) ("Even in the face of a carefully drafted contractual provision indemnifying a party for such attorneys' fees as may be necessitated by a successful action on the contract itself, our courts have consistently refused to sustain such an award absent statutory authority therefor.")

Likewise, as further noted by the district court in *Stillwell*, North Carolina courts hold that the "general purpose [of § 6-21.2 is] to validate a debt collection remedy expressly agreed upon by contracting parties." *Stillwell*, 300 N.C. at 294, 266 S.E.2d at 817-18. However, as previously noted, Monsanto did not initiate its lawsuit in November 2010 to collect any "debt" *owed* by ARE-108 to Monsanto. Therefore, allowing Monsanto to recover attorneys' fees would not "validate a debt collection remedy." *Id.* As held by the district court:

48

> Section 6-21.2 marks one such statutory authorization, however, Plaintiff [Monsanto] appears to fall outside those parties the statute was crafted to safeguard on these particular facts.  As a result of the particular facts of this case, Section 6-21.2 does not appear to contemplate or permit attorneys' fees recovery in this case of a declaratory judgment action where the required 1B Lease payments have been made.

JA-II-718.

Moreover, the North Carolina courts maintain that a further purpose of § 6-21.2 is "allow the debtor a last chance to pay his outstanding balance and avoid litigation, not to reward the prevailing party with the reimbursement of his costs in prosecuting or defending the action."  *Brooks Millwork Co. v. Levine*, *supra*, 204 N.C. App. 595, 696 S.E.2d 924, 2010 WL 2366541 at *2  (citing *Trull v. Central Carolina Bank & Trust*, 124 N.C. App. 486, 491, 478 S.E.2d 39, 42 (1996), *aff'd in part, rev. dismissed in part*, 347 N.C. 262 (1997)).  Once again, ARE-108 did not *owe* a debt to Monsanto, and there was no outstanding balance *owed* to Monsanto when the suit was filed in November 2010.  Therefore, permitting Monsanto to recover attorneys' fees would not "allow the debtor a last chance" as intended by § 6-21.2 (and as specifically required in subsection (5)).  *R.C. Assocs. v. Regency Ventures, Inc.*, 111 N.C. App. 367, 374, 432 S.E.2d 395, 398 (1993).

In its brief, Monsanto argues that § 6-21.2's purpose would be furthered by awarding attorneys' fees under the existing facts – but then makes

overbroad policy arguments without a single citation to applicable statutory or case law.  Monsanto Br., pp. 49-51.  However, as detailed above, the existing public policy behind § 6-21.2 is that attorneys' fees are not recoverable unless expressly authorized by statute, to which the district court correctly found that such fees are not authorized by applicable statute in this case (and on numerous grounds).

Moreover, in June 2011, North Carolina enacted legislation providing a "new" exception to the general North Carolina rule against enforcement of contractual attorneys' fee provisions.  That newly enacted statute – N.C. Gen. Stat. § 6-21.6 (titled "Reciprocal attorneys' fee provision in business contracts") now authorizes courts to enforce reciprocal attorney fee provisions in certain "business contracts" (as defined under § 6-21.6(a)(1)), but "only if all of the parties to the business contract sign by hand the business contract."  § 6-21.6(b).  Logically, this statute only became effective as of October 1, 2011, and thus *only applies to a "business contract" entered into on or after October 1, 2011* – and, specifically, is *not* applicable to Monsanto's claim for attorney fees under § 6-21.2 arising from the parties' 1B Lease dated April 3, 2000.  *See Silicon Knights, Inc. v. Epic Games, Inc.*, 917 F. Supp. 2d 503, 516 n.5 (E.D.N.C. 2012) (N.C. Gen. Stat. § 6-21.6 does not apply to contracts made before October 1, 2011); *Premier, Inc. v. Peterson*, 2012 NCBC 59, 45-46  n.2 (N.C. Super. Ct 2012), *vacated and remanded on different grounds*, 755 S.E.2d 56 (N.C. App. 2014)  ("However, Section 6-21.6

only applies to business contracts entered into on or after the statute's effective date of October 1, 2011.  Therefore, the statute does not apply to the Agreement in this case, which was entered into in 2006.")

Applied here, North Carolina's recent enactment of section 6-21.6 further evidences that the applicable statutory law in this case (§ 6-21.2) does not authorize attorneys' fees to either party under the 1B Lease – i.e., or why would North Carolina need to enact a "new" statute to provide for an award of attorneys' fees in certain "business contracts" entered into on or after October 1, 2011 (which was a substantive *change* to existing law).  As noted by the court in *Spruill v. Lake Phelps Volunteer Fire Dep't, Inc.*, 351 N.C. 318, 323, 523 S.E.2d 672, 676 (2000): "In construing a statute with reference to an amendment, it is presumed that the Legislature intended either (1) to *change* the substance of the original act or (2) to clarify the meaning of it." (citations omitted) (emphasis added).

Accordingly, for these additional reasons, the district court correctly denied Monsanto's request for attorneys' fees given the stated purposes of N.C. Gen. Stat. § 6-21.2 as applied to the facts in this case.

**6.    The district court correctly found that there was no secondary and/or separate agreement between ARE-108 and Monsanto which supported an award of attorneys' fees in this matter.**

In its brief, Monsanto also argues that the district court erroneously found Monsanto's "November 17 Notice Letter" (which, as detailed *supra*, was not a proper statutory "notice" letter under § 6-21.5) to constitute a "claim under a separate agreement, one arising from the terms of a partial settlement."  Monsanto Br., p. 44.  Thereafter, Monsanto makes two alternative arguments, one in the body of its brief and the other in a footnote, of which both are without substantive merit or logic.

Monsanto first argues that the "November 17 Notice Letter is not an independent contract, but a notification made pursuant to a lease."  Monsanto Br., p. 45.  By this statement and/or admission, Monsanto thus contends that the entire basis for its attorneys' fee claim must arise from the parties' 1B Lease dated April 3, 2000, and more importantly the application of § 6-21.2 to that 1B Lease under the existing facts.  As detailed above, and again on numerous grounds, the district court correctly held that Monsanto may not recover attorneys' fees from ARE-108 under § 6-21.2 and applicable law.

Alternatively, Monsanto next argues that, even "if that letter were a separate contract between the parties, it would have an attorneys' fees provision: Monsanto expressly reserved all of its rights under the Phase 1B Lease Agreement,

52

including, necessarily, the Attorneys' Fee provision."  Monsanto Br., p. 44, n.12.

But this argument misses the mark, and was directly addressed by the district court

as follows:

> However, this court concludes the language in the letter
> is most reasonably read to reserve rights under an
> ***existing*** contract [i.e., the existing 1B Lease dated
> April 3, 2000] rather than adding an attorneys' fee
> provision to a ***new*** contract, that is, the settlement
> agreement.  Even if the provision is ambiguous, this court
> reaches the same conclusion.  When construing an
> ambiguous provision in a written instrument, "the court is
> to construe the ambiguity again the drafter – the party
> responsible for choosing the questionable language."
> *Novacare Orthotics & Prosthetics East, Inc. v. Speelman*,
> 137 N.C. App. 471, 479, 528 S.E.2d 918, 921 (2000).

JA-II-723 (footnote 2) (emphasis added).

Moreover, even if a "new and separate" agreement containing a *new*

attorneys' fee provision had been agreed to by the parties via the November 17

Notice Letter (which did not occur, as Monsanto did not propose any "new and

separate" attorney fee provision nor did ARE-108 ever accept such a non-existent

proposal), Monsanto's recovery of attorneys' fees would still not be authorized

under N.C. Gen. Stat. § 6-21.2 – as, once again, there still existed no "owed" debt,

no "matured" debt, and no "outstanding balance" as between the parties as of

November 2010 when Monsanto's complaint was filed.  Further, even under this

hypothetical scenario, Monsanto never provided ARE-108 with statutory written

notice of any "outstanding balance" and/or "five days" to pay such "outstanding

balance" under § 6-21.5, as statutorily required to claim attorneys' fees under applicable North Carolina law.

Accordingly, for these additional reasons, the district court correctly denied Monsanto's request for attorneys' fees in this case.

### C.    Although The Issue Should Now Be Moot, An Attorneys' Fee Award Of 15% Of The "Outstanding Balance" Is Merely A Cap, And The Court Has Discretion To Award Less Than 15%.

Given the above analysis of N.C. Gen. Stat. § 6-21.2, § 6-21.5, and applicable law, it is clear that the district court correctly denied Monsanto's request for attorneys' fees under § 6-21.2.  However, *assuming arguendo* that Monsanto could seek to recover such fees under § 6-21.2, the recent case law holds that the district court would not be bound to award 15% of the purported "outstanding balance", and thus would have discretion to award less than 15%.

North Carolina courts have stated that "subdivision (2) has predetermined that 15% is a reasonable amount[.]" *R.C. Assocs.*, 111 N.C. App. at 373, 432 S.E.2d at 397; *see* also *Trull*, 124 N.C. App. at 493, 478 S.E.2d at 44. However, there is a clear distinction between predetermining that an amount is statutorily "reasonable" and mandating that all courts must award that 15% amount as applied to an "outstanding balance" under § 6-21.2.  In other words, 15% being "reasonable" does not preclude other amounts less than 15% from also being "reasonable" in the court's discretion.

54

For example, the court in *State Wholesale Supply, Inc. v. Allen* interpreted 15%, with respect to subsection (2), as "a *ceiling* on the amount of attorney's fees a party can obtain."  30 N.C. App. 272, 277, 227 S.E. 120, 124 (1976) (emphasis added).  Likewise, in *Southland Amusements & Vending, Inc. v. Rourk*, the court reversed an award of attorneys' fees at 32% of liquidated damages, determining that such award was "clearly excessive and not permissible under [subsection (2)]."  143 N.C. App. 88, 96, 545 S.E.2d 254, 258 (2001).  Likewise, in *Finch v. Campus Habitat, LLC*, the court reversed an award on the grounds that "more than 15% of the 'outstanding balance' is in violation of [subsection (2)]".  220 N.C. App. 146, 150,724 S.E.2d 174, 177 (2012).  The court reversed the award because it was "more than" 15%, not because it "did not equal" 15%.

Applied here, the court holdings in *State Wholesale Supply, Inc.*, *Southland Amusements & Vending, Inc.*, and *Finch* each clearly indicate that 15% is a cap, not a mandate, and that attorneys' fee awards of less than 15% under subsection (2) are permissible.

1.    **Recent case law has permitted attorneys' fee awards below 15% of the "outstanding balance" pursuant to the court's discretion.**

In comparing the more recent North Carolina case law with the 1994 decision in *Devereux Properties, Inc. v. BBM & W, Inc.*, 114 N.C. App. 621, 442 S.E.2d 555 (1994), it becomes clear that the Court has judicial discretion to award attorneys' fees below 15% of an "outstanding balance" owed by the debtor.

For example, in 2006, the court in *Bombardier* affirmed an attorneys' fee award of less than 15%. 178 N.C. App. at 541-42, 632 S.E.2d at 197. The *Bombardier* court stated that "[w]hen the trial court determines an award of attorney fees is appropriate under the statute, the amount of attorney fees award lies within the discretion of the trial court." *Id.* (citations omitted). In 2009, the court in *Telerent Leasing Corp. v. Boaziz* rejected a 15% "mandate" argument and affirmed an attorneys' fee award that "was well below the statutory ceiling of fifteen percent," and further held that in order to "overturn the trial judge's determination [on the issue of attorneys' fees], the defendant must show an abuse of discretion." 200 N.C. App. 761, 765-767, 686 S.E.2d 520, 523, 524 (2009) (citations omitted); *see* also, *Trull*, 124 N.C. App. at 492, 478 S.E.2d at 43 ("Therefore, the award of attorneys' fees is conclusive absent an error of law or abuse of discretion by the trial court.").

Further, in *In re Pak-a-Sak Food Stores, Inc.*, the Bankruptcy Court affirmed an attorneys' fee award of less than 15%, and did so while respecting the distinction between subsections (1) and (2) of N.C. Gen. Stat. § 6-21.2. 2008 Bankr. LEXIS 4390, at *9-11 (Bankr. E.D.N.C. Jan. 9, 2008). The Bankruptcy Court specifically held that because the prevailing party requested less than 15%, "the court need not make a factual finding that the 'reasonableness' provisions of the obligations are met because the fees requested…are deemed reasonable pursuant to § 6-21.2(2)." *Pak-a-Sak*, 2008 Bankr. LEXIS 4390 at *11. This holding indicates that because awards of 15% are predetermined to be "reasonable", awards of below 15% are also predetermined to be "reasonable."

By contrast, back in 1994, the court in *Devereux Properties, Inc. v. BBM & W, Inc.* remanded an award below 15%, and stated that "the trial court should have awarded 15% of the outstanding balance." 114 N.C. App. 621, 626, 442 S.E.2d 555, 558. However, it is crucial to note that the *Devereux* court did not state that the trial court had abused its discretion in reaching that determination, which is the applicable standard (as noted above). *Id.* Further, in remanding the award, *Devereux* did not cite a single case that had also remanded an award of less than 15%. Instead, *Devereux* only relied on *R.C. Associates*, which simply reversed an award in excess of 15%. *Devereux*, 114 N.C. App. at 626, 442 S.E.2d at 558 (citing *R.C. Assocs.*, 111 N.C. App. at 372, 432 S.E.2d at 397).

57

In addition, to ARE-108's review, no court since 1994 has since relied on *Devereux* to remand an award of attorneys' fees less than 15%. On the contrary, *Bombardier* was decided in 2006 and affirmed an award below 15%, *Pak-a-Sak* was decided in 2008, and *Telerent* was decided in 2009. Clearly, *Bombardier*, *Pak-a-Sak*, and *Telerent* could have relied on *Devereux* to remand awards of attorneys' fees, but did not do so and instead focused on the court's exercise of discretion regarding the award at or below 15% of the "outstanding balance" owed by the debtor.

Accordingly, the weight of recent North Carolina case law authority points toward judicial discretion, and that the district court would have the ability to award attorneys' fees less than 15% of the outstanding balance under N.C. Gen. Stat. § 6-21.2. However, as detailed above, this issue is moot given that the district court correctly denied Monsanto's request for attorneys' fees from ARE-108 under the existing facts and applicable North Carolina law.

## CONCLUSION

The portion of the final amended judgment granting Monsanto's motion for summary judgment and monetary award of $2,024,115.24 should be vacated, and this matter remanded back to the district court for discovery proceedings as previously requested by ARE-108 in this case. Further, the portion

of the final amended judgment denying Monsanto's request for attorneys' fees should be affirmed.

## LOCAL RULE 34(a) STATEMENT

Pursuant to Local Rule 34(a), ARE-108 respectfully requests oral argument given the procedural and substantive arguments at issue in Monsanto's cross-appeal, and believes that oral argument would assist the Court's consideration of this matter.

Respectfully submitted,

/s/ Mark E. McKeen
Mark E. McKeen
**PAUL HASTINGS LLP**
55 Second Street, 24th Floor
San Francisco, CA 94105-3441
Telephone:  (415) 856-7000
markmckeen@paulhastings.com

*Attorneys For ARE-108 Alexandria Road, LLC*

December 4, 2014

/s/Joseph H. Stallings
Joseph H. Stallings
**HOWARD, STALLINGS, FROM & HUTSON, P.A.**
P.O. Box 12347
Raleigh, NC 27605-2347
Telephone: (919) 821-7700
jstallings@hsfh.com

*Attorneys For ARE-108 Alexandria Road, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P.
       28.1(e)(2) or 32(a)(7)(B) because:

       [ X ] this brief contains [*13,835*] words, excluding the parts of the brief
       exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

       [    ] this brief uses a monospaced typeface and contains [*state the number
       of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
       32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.
       32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

       [ X ] this brief has been prepared in a proportionally spaced typeface using
       [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

       [    ] this brief has been prepared in a monospaced typeface using [*state
       name and version of word processing program*] with [*state number of
       characters per inch and name of type style*].


Dated: <u>December 4, 2014</u>            <u>/s/ Mark E. McKeen            </u>
                                          *Counsel for Appellant/Cross-Appellee*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 4th day of December, 2014, I caused this Reply Brief of Appellant/Cross-Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jason G. Idilbi
Scott M. Tyler
Jonathan M. Watkins
MOORE & VAN ALLEN
100 North Tryon Street, Suite 4700
Charlotte, North Carolina  28202-4003
(704) 331-1000

David E. Fox
MOORE & VAN ALLEN
430 Davis Drive, Suite 500
Research Triangle Park, North Carolina  27709

*Counsel for Appellee/Cross-Appellant*

I further certify that on this 4th day of December, 2014, I caused the required copies of the Reply Brief of Appellant/Cross-Appellee to be hand filed with the Clerk of the Court.

/s/ Mark E. McKeen
*Counsel for Appellant/Cross-Appellee*